UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 5:08-cv-57-JMH |
| v. | ) | |
| | ) | |
| $72,050.00 IN UNITED STATES | ) | |
| CURRENCY, ONE FIRST SOUTHERN | ) | **MEMORANDUM OPINION AND ORDER** |
| NATIONAL BANK CASHIERS CHECK | ) | |
| #062629 IN THE AMOUNT | ) | |
| OF $60,649.64, AND ONE | ) | |
| WHITAKER BANK CASHIERS | ) | |
| CHECK #022175 IN THE AMOUNT | ) | |
| OF $100,000.00, | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** **

This matter is before the Court upon the Motion for Summary Judgment [DE 28] filed in this case by the United States of America. Claimant Vernon Smith has filed a Response [DE 31], and the United States has filed a Reply in further support of its Motion [DE 32]. Claimant Vernon Smith also seeks leave to late-file a Motion for Summary Judgment, to which the United States has objected, and he has filed a reply in further support and has tendered the pleadings which would be filed if leave were granted [DE 34, 35, 36, 37, 38], including a Motion for an Extension of Time to late-file the perhaps late-filed but ultimately only tendered Reply [DE 39; *see also* DE 40, United States Response to Motion for Extension of Time to File Reply; DE 41, Claimant's Reply in Further Support].

As an initial matter, the Court concludes that Vernon Smith's

efforts to move for summary judgment were woefully out of time and his efforts to supplement discovery already taken and concluded are not to be applauded.   That said, considering the late date, the Court has considered those portions of these filings which are relevant to the inquiries before it – by which the Court means that it will not consider them insofar as they constitute a collateral attack on the issues at bar and on appeal in Frankfort Criminal Action No. 08-31-JMH.   There is a place and a method for challenging issues in that matter, and the Court does not consider the two matters interchangeable although they are related.   The Court grants his motion to late file a motion for summary judgment and has considered, as well, the pleadings as materials offered in further support of his objections to the United States' Motion for Summary Judgment.

Accordingly, the Court considers whether forfeiture of certain currency and two cashier's checks, found in the home of Claimant Vernon Smith, is appropriate.   The United States bears the initial burden of proof and must show by a preponderance of the evidence that the property is subject to forfeiture, 18 U.S.C. § 983(c), i.e., that it is more likely than not (1) that the defendant property was proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343 or (2) that it was involved in a transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960.   If the United States meets its initial burden, then the

claimant must prove by a preponderance of the evidence that the property is not proceeds of the illegal activity or that he is an innocent owner. 18 U.S.C. § 983(d).

The Court concludes, as an initial matter, that the United States has not met its burden of proof with respect to the currency but that it has demonstrated by a preponderance of the evidence that the cashier's checks were proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343, for the reasons which follow. The Court then concludes that Claimant Vernon Smith has failed to show by a preponderance of the evidence that those cashier's checks were not the proceeds of illegal activity or that he is an innocent owner, as that term is defined in the statute.

I.   Background

A.   Procedural History

On August 9, 2007, the defendant cashier's checks and currency were seized pursuant to a search warrant executed at claimant Vernon Smith's residence. It is undisputed that the defendant currency and cashier's checks were located in a safe in the basement of a house occupied by Vernon Smith during a search executed during the investigation which led to Frankfort Criminal Action 08-31-JMH, *United States v. Michael D. Smith, et al.* That case was tried before a jury in June and July 2010, and Michael D. Smith and Christopher Cello Smith – the sons of Claimant Vernon

-3-

Smith – were convicted on a number of counts of fraud arising out of the sale of oil and gas interests to investors in a company called Target Oil and Gas.  Michael D. Smith was also convicted of conspiracy to commit fraud.  At trial, the jury considered whether Michael D. Smith and Christopher Cello Smith's interests in the cash and cashier's checks, which are the defendants in this matter, were subject to forfeiture and concluded that only their interest in the cashier's checks was subject to forfeiture.[1]

Meanwhile, on November 9, 2007, Vernon Smith filed claims to the two cashier's checks and currency with the United States Postal Inspection Service (USPIS) in a nonjudicial forfeiture proceeding against the property.  This civil forfeiture action in rem was filed against the defendant property on February 7, 2008, to enforce the provisions of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of personal property which was involved in a transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960; and/or is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1341 and 1343, and thereby subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Vernon Smith, through counsel, filed a claim and an answer. This civil action remained stayed pending the outcome of the

---

[1]In light of this conclusion, little more factual information concerning the cash is relevant to the Court's inquiry.  The relevant additional information concerning cashier's checks is set forth below.

related criminal investigation and prosecution, Frankfort Criminal Action No. 08-31-JMH.   At the conclusion of that criminal prosecution, the Court lifted the stay in the present case, discovery took place, and the matter is now before the Court upon the parties' motions.

### B.   Cashier's Check #062629

The defendant cashier's check 062629, in the amount of $60,649.64, was purchased by claimant Vernon Smith using a check drawn on his account 30027263 at First Southern National Bank on September 19, 2005, at which time his account was closed.   The cashier's check shows a remitter as "close account # 30027063" and is payable to Vernon Smith.   From the time the account was opened in 1999 through April 2003, the balance in the account ranged from $8,000.00 to $10,010.12.   Four deposits were then made from May 20, 2003, through August 11, 2004, totaling $49,700.00.

The first of these deposits, on May 20, 2003, involved the deposit of $6,000 from a Citizens National Bank of Jessamine County cashier's check (27039) dated May 13, 2003, remitted by Michael Smith, payable to Michael Smith, and endorsed by Michael Smith.[2] Cashier's check 27039 was purchased with funds from Target Oil & Gas Operating Account 2016443 at Citizens National Bank of Jessamine County.   Funds deposited in Account 2016443, which covered the cost of cashier's check 27039 were deposits of investor

_____

[2]$6,000 was also returned in Cash.

-5-

funds.

The second deposit, in the amount of $41,000, which was made on July 31, 2003, was from a Citizens National Bank of Jessamine County cashier's check 27165 dated July 31, 2003, remitted by Target Oil & Gas, payable to Michael Smith, and endorsed by "Mike Smith by Vernon Smith" with a signature that may well be that of Vernon Smith.  Cashier's check 27165 was purchased with funds from Target Oil & Gas Operating Account 2016443 at Citizens National Bank of Jessamine County.  Again, the source of all funds deposited in the account, which covered the cost of cashier's check 27165, were deposits of investor funds.

The third deposit, in the amount of $2,200, was made on June 21, 2004, from a check made payable to Mike Smith by Olen Lee Cornette and endorsed by Mike Smith.  The fourth deposit, in the amount of $500.00, resulted from a split deposit of a $961.21 check made payable to Mike Smith from Blue Grass Stockyards, Inc., of which $461.21 was returned in cash.  Over time, the funds in the account earned interest of $939.52.

As for the cashier's checks 27039 and 27165 deposited in FSNB Account 30027063 on May 20, 2003, and July 31, 2003, they were paid for with funds drawn from the Target Oil & Gas Operating Account No. 2016443 at Citizens Bank.  The United States has offered evidence of the statement period from May 1, 2003, through May 30, 2003, for that account.  This statement period encompasses the time

-6-

periods in which cashier's check 27039 and 27165 were purchased.

Cashier's check 27039 was purchased using Target Oil and Gas Corp. Check 11498 in the amount of $12,000.00 drawn on that account, dated May 13, 2003, signed by Michael Smith. The withdrawal from account 2016443 was posted on May 13, 2003. There were twenty-three deposits made to account 2016443 in the statement period, and the United States has presented evidence that each of the investor checks were deposited either directly to the Operating Account or first deposited to one of several other business savings accounts of Target Oil & Gas (3095452, 306394, and 3096769) and then transferred to account 2016443. Each of the deposits to the respective savings accounts from which deposits were received into 2016443 during this period were determined to have been deposits of investor checks. There was a negative balance in account 2016443 at the beginning of the statement period (-$3,191.58), so all funds in the operating account for the statement period were originally investor funds and, by extension, the $6,000 deposited to the FSNB account from the $12,000 cashier's check 27039 were investor funds.

With respect to the cashier's check 27165, it was issued by CB on July 15, 2003, in the amount of $50,000, payable to Mike Smith, purchased by Michael Smith with Target Oil and Gas check 11899, dated July 15, 2003, signed by Michael Smith, and drawn on Target Oil & Gas Operating Account number 2016443. The withdrawal made by virtue of check 11899 was posted on July 15, 2003. The beginning

balance for the period July 1, 2003, to July 31, 2003, was $97,447.84, from unknown sources. However, 210 withdrawals to account 2016443 were posted to account 2016443 prior to the posting of the withdrawal made by virtue of check 11899 on July 16, 2003. Those 210 prior withdrawals would have depleted all of the $97,447.84 in funds that were present at the beginning of the statement period. The only funds left to purchase cashier's check 27165 were those deposited in the period and which covered check 11899. These were all derived from investor funds, whether deposited directly into the operating account or from transfers of funds from savings accounts 3083454, 3096394, 3096769, 3097668, or 3098257. Each of these savings accounts received deposits solely from investor funds. It follows that the $41,000.00 deposited from the $50,000 cashier's check 27165 came from investor funds.

Ultimately, $47,000 of the funds used to purchase cashier's check 062629 can be traced to investor funds.

### B.  Cashier's Check 022175

As for Whitaker Bank cashier's check 022175, dated September 19, 2005, in the amount of $100,000, the remitter is Vernon Smith and it is payable to Vernon Smith. The cashier's check was purchased when Vernon Smith issued a $100,000.00 check against Whitaker Bank Account 80128961, the account of "Vernon Smith or Michael Smith".

The monthly account statement for account 80128961, which

-8-

encompasses the purchase of the cashier's check, covers a period
ending September 20, 2005.  The account had a beginning balance of
$108,058.32 and an ending balance of $8,607.50, which amount
remained after the $100,000.00 counter check used to purchase
cashier's check 022175 was posted to the account as a withdrawal.
The United States has offered evidence that the beginning balance
in the account on December 15, 2002, was $16,911.73.  From that
date through September 19, 2005, there was only one deposit that
was not a social security check or interest earned on the account
– a deposit of $75,000.00 on April 9, 2004.  From December 15,
2002, through March 17, 2004, the only deposits were social
security direct deposits and the interest earned on the account
each month, for a total of $7,660.69.  Three withdrawals totaling
$710.80 were made during this period, leaving an account balance of
$23,861.62 on March 17, 2004.  From March 18, 2004, through April
15, 2004, three deposits were made, yielding an ending balance of
$99,379.54: a social security direct deposit of $507.00 on April 2,
2004, a deposit of a $75,000.00 CB cashier's check 32070 on April
9, 2004, and a $10.92 deposit of interest earned on April 15, 2005.
Between April 17, 2004, and August 17, 2005, the only deposits made
were social security direct deposits and interest earned.  One
withdrawal of $20.00 was made, as well.  The account balance on
August 17, 2005, was $108,058.32.  From August 18, 2005, through
September 20, 2005, the only deposits were, again, from social

-9-

security direct deposit and interest earned.  On September 19, 2005, Vernon Smith issued a counter check in the amount of $100,000 to WB.  The remitter was Vernon Smith, and the check was payable to Vernon Smith.  The check was posted to Account No. 80128961 on September 19, 2005, leaving a balance of $8,058.32.

CB cashier's check 32070 in the amount of $75,000.00 was drawn on Citizen's Bank.  It is dated April 8, 2004, the remitter is Target Oil & Gas, the payee was Michael D. Smith, and the check was endorsed by Michael Smith.  The check was purchased with a counter check drawn on Citizen's Bank in the amount of $75,000.00, posted against Target Oil & Gas account 2016443, signed by Michael Smith.

Ultimately, $75,000.00 of the funds used to purchase cashier's check 022175 can be traced to investor funds.

## II. Forfeitability of the *Res*

The initial determination to be made is whether the currency and cashier's checks in which Vernon Smith claims an interest are subject to forfeiture as proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343 or because they were involved in a transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960.  The charges set forth in the indictment in Frankfort Criminal Action No. 08-31-JMH are the basis for the United States' forfeiture action *in rem* since, in the present case, the government contends that both the currency and the cashier's checks are or were derived from proceeds traceable to the mail

-10-

and/or wire fraud committed by the defendants in the criminal action or that the defendant items were involved in a money laundering transaction which involved proceeds of that same fraud. For the reasons which follow, the Court concludes that the defendant currency is not subject to forfeiture but the defendant cashier checks are since they are proceeds traceable to a scheme or artifice to defraud.

### A.    Currency

The Court first considers the defendant currency.  Ultimately, a number of defendants entered guilty pleas in Frankfort Criminal Action No. 08-31-JMH , and Michael D. Smith and Christopher Cello Smith were found guilty by a jury of various violations of the mail fraud statute, 18 U.S.C. § 1341.  After reaching that conclusion, the same  jury was asked to consider, as well, whether any interest that Michael D. Smith and Christopher Cello Smith might have in the defendant currency was subject to forfeiture under the criminal forfeiture provisions of the United States Code.   In order to consider that issue, the jury had to consider first and foremost whether the currency constituted or were derived from proceeds of the violations for which Michael D. Smith and Christopher Cello Smith were adjudged guilty.

On a special verdict form, jury members recorded their conclusion that they could not "unanimously find by a preponderance of the evidence that the [$72,050.00 in] currency constitute[d] or

[was] derived from proceeds obtained directly or indirectly as a result of the violation(s) for which [they] found . . . Michael D. Smith or . . . Christopher Cello Smith guilty." In the Preliminary Judgment of Forfeiture proposed by the United States in Frankfort Criminal Action No. 08-31-JMH on July 30, 2010 [DE 349] and entered by this Court on August 2, 2010 [DE 350], there is no reference to the defendant currency, nor is it included in any of the subsequent forfeiture orders entered in that matter. Clearly, the United States considered the issue of whether the cash was considered the proceeds of the fraud charged in the indictment to be conclusively decided with respect to the criminal matter. This Court does, too.

With respect to the present civil matter, however, the United States takes the position that it may still proceed against the cash because the criminal and civil actions are separate and distinct from one another, citing *United States v. Lazarenko*, 504 F. Supp. 2d 791, 800-801 (N.D. Cal. 2007). While it is true that these actions are separate and distinct from one another, the United States is bound by the decision of the jury with respect to the currency under the doctrine of issue preclusion.

As summarized by the United States Court of Appeals for the Sixth Circuit:

> Res judicata, i.e., the preclusive effect of a judgment, encompasses two distinct doctrines: claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 891-93 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or

-12-

> not relitigation of the claim raises the same
> issues as the earlier suit.' " *Id.* (*quoting
> New Hampshire v. Maine*, 532 U.S. 742, 748
> (2001)). In contrast, issue preclusion "bars
> 'successive litigation of an issue of fact or
> law actually litigated and resolved in a valid
> court determination essential to the prior
> judgment,' even if the issue recurs in the
> context of a different claim." *Id.* (*quoting
> New Hampshire*, 532 U.S. at 748-49).[3]

*General Elect. Medical Systems Europe v. Prometheus Health*, 394 Fed. App'x 280, 283 (6th Cir. 2010); *see also Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996) (applying federal issue-preclusion law to determine whether to give preclusive effect to a prior federal judgment).

While the Court usually must consider whether "the subsequent action involves the same parties or privities" in determining whether a subsequent action is barred by res judicata, *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), the requirement of mutuality may be set aside in this instance because "no constitutional right is violated where the thing to be litigated

---

[3]The Court notes that the cases upon which the United States relies in its Response brief [DE 37], *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-62 (1984); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 236-37 (1972); *United States v. Ford*, 64 Fed. Appx. 976, 984 (6th Cir. 2003) *United States v. Four Contiguous Parcels*, Nos. 98-5292, 98-5317, 1999 WL 701914, at *5 (6th Cir. September 1, 1999), concern situations where a defendant was acquitted on criminal charges and a jury never reached the issue of forfeiture of property. These are not applicable in the present matter.

-13-

was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it." *Humphreys v. Tann*, 487 F.2d 666, 670 (6th Cir. 1973). By contrast, "those [litigants] who never appeared in a prior action . . . may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." *Id.* at 671 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)).

In the instant matter, the United States had its day in court with respect to the issue of whether the currency constitutes proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343. Issue preclusion bars further litigation of that issue. As to whether the currency was involved in a transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, Plaintiff's theory relies on whether the currency was proceeds of a scheme or artifice to defraud. Thus, in light of the jury verdict, Plaintiff cannot show, as a matter of law, that the currency "represent[ed] the proceeds of some form of unlawful activity," was "criminally derived," or was "derived from a criminal offense" as required to demonstrate a violation of 18

-14-

U.S.C. §§ 1956, 1957, and 1960(b)(1), nor has Plaintiff shown that
the currency was involved in a transaction undertaken by "an
unlicensed money transmitting business" as that term is understood
in 18 U.S.C. § 1960.  The government has already failed to persuade
the jury of the provenance of the currency, and the Court will not
revisit the issue here.  Plaintiff's Motion for Summary Judgment
shall be denied with respect to the currency, and Claimant Vernon
Smith's Motion for Summary Judgment shall be granted in this
regard.

**B.  Cashier's Checks**

The cashier's checks present, however, a different story, and
the Court shall consider the government and claimant's respective
arguments in this regard.[4]  The undisputed evidence shows that
funds taken from Target investors during the period of the criminal
indictment were deposited by Michael D. Smith into Vernon Smith's
personal account and then used, along with other funds present in
Vernon Smith's account from other sources, to purchase the
cashier's checks.  The Court has expressed, on a number of
occasions in Frankfort Criminal Action 08-31-JMH, that the

---

[4]   The jury in the criminal trial unanimously found by a
preponderance of the evidence that the two defendant cashier's
checks "constitute[d] or [were] derived from proceeds obtained
directly or indirectly as a result of the violation(s) for which
[they] found . . . Michael D. Smith or . . . Christopher Cello
Smith guilty."   Neither the cashier's checks nor Claimant Vernon
Smith were parties to that action, unlike the United States, and
the Court considers their arguments today.

defendants' scheme to defraud investors by means of mail fraud was so pervasive that it infected the entire scheme and, thus, any money taken from investors funds can be considered the proceeds of a scheme or artifice to defraud. The cashier's checks were traceable to those funds and are, themselves, proceeds traceable to a scheme or artifice to defraud.

Ultimately, the Court concludes that the funds used to purchase some portion of both cashier's checks were the proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343. Tracing of funds used to purchase cashier's check 062629 revealed that at least $47,000.00 of the money used to purchase it had been deposited in Vernon Smith's account by Michael D. Smith and came from Target accounts. The $100,000 check purchased by Vernon Smith using funds from his account at Whitaker Bank was also purchased on September 19, 2005, and the tracing evidence shows that at least $75,000.00 of the funds used to purchase it had been deposited in Vernon Smith's account by Michael D. Smith and came from Target accounts.

All the relevant transactions fall within the period of the indictment, which alleges that the actions in Count I thereof began on February 18, 2003, and continued through February 28, 2008. [*See United States v. Smith*, Frankfort Criminal Action No. 08-31-JMH, DE 1.] It is irrelevant to this Court that the investor funds were mixed with other funds which the Court assumes, for the purposes of

its inquiry today, were "innocent funds" belonging to Vernon Smith. The tainted funds did not become innocent merely by their association with "innocent funds." As discussed below, the Court determines that these arguably legitimate funds were tainted by their association with the tainted funds and became subject to forfeiture.

The Court next turns its attention to whether Vernon Smith is an owner with standing to protest all or some portion of the forfeiture of the cashier's checks and, if he is an owner of all or some portion of the checks, whether he is an innocent owner subject to the exception to forfeiture under the statute.

## III. Innocent Owner Exception

Under 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." In the instant matter, Claimant Vernon Smith urges the Court to conclude that his interest was in existence at the time the conduct giving rise to forfeiture took place such that "innocent owner" would be defined according to 18 U.S.C. § 983(d)(2)(A). The United States takes the position that Vernon Smith was never an owner of the cashier's checks made payable to him and found in a safe in the basement of his home but was, instead, merely a nominee for Michael D. Smith and exercised no dominion or control over the property.

-17-

The United States argues, in the alternative, that the Court should apply subsection 983(d)(3), which deals with property interests arising after the conduct giving rise to the forfeiture takes place.  The Court has considered this issue, assuming without deciding that claimant has at the present time, an adequate ownership interest in the property to have standing to challenge the forfeiture.  As an initial matter, the Court is not persuaded that subsection (d)(2)(A) applies for the reasons set forth below. Further, having considered whether Claimant is due relief under subsection (d)(3)(A), the Court concludes that he is not, as set forth below.

Vernon Smith claims that he bought a sawmill, two bulldozers, an end loader, a forklift, and a power unit after Michael Smith finished college around 1980 so that his son could set up a saw mill business, ultimately "loaning" more than $150,000 to Michael Smith by financing these purchases.  According to Vernon Smith, the saw mill business never paid enough to make it easy for Michael Smith to pay back his father.  Ultimately, when Michael Smith's oil and gas business began making more money after 2000, Vernon Smith states that he decided he might want money to purchase land and asked his son to repay some of that loan, that his son sold a drill rig for $275,000, and that Michael Smith repaid Vernon Smith $75,000 in 2004 – and that it is from this money that the cashier's checks were purchased.

The evidence demonstrates that, in fact, the cashier's checks were purchased from funds derived from Target investor funds and placed in his account in 2003 and 2004 as set forth earlier in this memorandum opinion and order – not from the sale of an oil rig. Further, there is no evidence, other than Vernon Smith's conclusory and, frankly, convenient statement that he asked his son to repay an undocumented loan – of some amount – three decades old, that such a loan existed.  Most importantly, there is no evidence from which the Court can conclude that his son had a legal obligation to repay such a loan, even if it was made.  Accordingly, the Court cannot conclude that Claimant's interest in the money used to purchase the cashier's checks arose at a time prior to the time that the money was placed in his bank account – from March 2003 through 2004.   18 U.S.C. § 983(d)(2)(A) does not apply.

Looking instead to 18 U.S.C. § 983(d)(3), the Court considers whether Vernon Smith was a bona fide seller of something for value and, thus, received the funds used to purchase the defendant cashier's checks.  The Court has already rejected the idea that the funds were placed in the account as a repayment for an old loan, and the claimant has provided no other theory upon which the Court might conclude that he was a "bona fide seller for value," as required for relief under subsection (d)(3).  At best, the Court would have to conclude – although it need not and does not – that the funds were a "gift" from Michael D. Smith to his father under

-19-

Kentucky law. *See Knox v. Trimble*, 324 S.W.2d 130, 132 (Ky. 1959) (holding that for a gift to be made there "must be a gratuitous and absolute transfer of the property from the donor to the donee which takes effect immediately and is fully executed by delivery of the property by the donor and the acceptance thereof by the donee."). This would not be enough to permit Vernon Smith to claim relief under subsection (d)(3)(A) or, for that matter, (d)(3)(B), which further extends the innocent owner exception to those who receive items without an exchange in value for the property under certain circumstances which have not been demonstrated here. Accordingly, Claimant Vernon D. Smith is not an innocent owner of the cashier's checks for the purposes of 18 U.S.C. § 983(d)(3).[5]

Further, the Court reaches the conclusion that the cashier's checks, as a whole, must be forfeited, relying on *United States v. Huber,* 404 F.3d 1047, 1057-58 (8th Cir. 2005) (holding that legitimate crop-sales proceeds and crop-insurance benefits that were commingled in accounts with farm program fraud proceeds were subject to forfeiture as part of the "corpus" and that "[t]he presence of legitimate funds made the transactions no more lawful because the transactions still

---

[5]Here, the Court notes that it need not and has not made a finding as to what, if anything, Claimant Vernon Smith knew about the conduct which gave rise to the forfeiture. The Court notes, however, that he has steadfastly maintained that he was not aware of any illegal activity on the part of his sons, Michael D. Smith and Christopher Cello Smith.

involved the illegitimate proceeds). *See also United States v. Funds on Deposit at Bank One Indiana Account 1563632726*, No. 2:02-cv-480, 2010 WL 909091, at *9 (N.D.Ind. Mar. 9, 2010) (applying *Huber* with approval and stating that "all money involved in withdrawals or transfers from commingled account are subject to forfeiture as the "corpus"); *United States v. Warshak*, 562 F. Supp. 2d 986, 1005 (S.D. Ohio 2008).

Accordingly, the United States' Motion for Summary Judgment shall be granted in this regard, and Claimant Vernon Smith's Motion for Summary Judgment shall be denied in this regard.

## IV.   CONCLUSION

The Motion for Summary Judgment of the United States of America shall be granted in part and denied in part for all the reasons stated above. Additionally, the Court grants, in part and denies in part, Claimant Vernon Smith's request for leave to late-file a Motion for Summary Judgment and Motion for an Extension of Time a Reply in Support thereof, again for the reasons stated above.

Accordingly, **IT IS ORDERED**:

(1) that the United States' Motion for Summary Judgment [DE 28] is **GRANTED IN PART** and **DENIED IN PART**;

(2) Claimant Vernon Smith's request for leave to late file a Motion for Summary Judgment and Motion for an Extension of Time to late-file a Reply [DE 34 & 39] are **GRANTED**.

-21-

(3)  Claimant Vernon Smith's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

This the 1st day of April, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge