```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
                 CENTRAL DIVISION at LEXINGTON

UNITED STATES OF AMERICA,      )
                               )
     Plaintiff,                )
                               )
v.                             )
                               )           Civil Case No.
$72,050.00 IN UNITED STATES    )           08-cv-57-JMH
CURRENCY, ONE FIRST SOUTHERN   )
NATIONAL BANK CASHIERS CHECK   )    MEMORANDUM OPINION & ORDER
#062629 IN THE AMOUNT    OF    )
$60,649.64, AND ONE WHITAKER   )
BANK CASHIERS CHECK #022175    )
IN THE AMOUNT OF $100,000.00,  )
                               )
     Defendants.               )
```

                                 ***

This matter is before the Court on Claimant Vernon Smith's Motion to Correct Mistake Pursuant to Fed. R. Civ. P. 60(b)(1) [DE 46]. The United States has filed a Response [DE 49]. The time to file a Reply has expired, *see* LR 7.1(c), and Claimant has made no further filing in support of his Motion. Claimant has, however, filed an additional Motion, seeking an evidentiary hearing [DE 51]. The Court has considered that request and will deny it as an evidentiary hearing is not necessary to an informed resolution of the motion at hand.

Federal Rule of Civil Procedure 60(b)(1) allows a trial court to relieve a party from a final judgment

because of mistake, inadvertence, surprise, or excusable neglect. A party seeking relief from the judgment must show the applicability of the rule. *Jinks v. Alliedsignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001) (citing *Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir. 1993)) ("As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment.").[1] Rule 60(b) motions are not designed to allow a litigant a second chance to convince

---

[1] The Sixth Circuit has recognized that "mistake" encompasses "a claim of legal error," and has held that a "60(b)(1) motion based on legal error must be brought within the normal time for taking an appeal." *Pierce v. United Mine Workers of Am. Welfare & Retirement Fund for 1950 and 1974*, 770 F.2d 449, 451 (6th Cir. 1985). Of course, the filing of a Notice of Appeal generally divests the district court of jurisdiction; however, where the notice is filed while a timely motion for relief from a final judgment is pending, the notice has no effect. *See Brown v. Univ. Comprehensive Assessment & Training Servs.*, No. 12-cv-123-KSF, 2013 WL 1687886, *1-2 (E.D. Ky. Apr. 18, 2013) (determining that motion under Rule 59(e) was timely and that jurisdiction remained in district court since notice of appeal was filed while motion was pending) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *Pittock v. Otis Elevator Co.*, 8 F .3d 325, 327 (6th Cir. 1993); *United States v. Real Property Located at U.S. Highway S.*, 23 F. App'x 523, 526 (6th Cir. 2001); *Meyers v. Hurst*, 7 F.3d 234, 234 (6th Cir. 1993); *Young v. Rochte*, 791 F.2d 936, 1986 WL 16969 at *1 (6th Cir. Apr[.] 18, 1986) (Table)). Here, Claimant filed his Motion to Correct several minutes prior to filing his Notice of Appeal. Accordingly, Claimant argues that a legal error was made in a timely motion, and the Court will consider his argument.

the Court to rule in his favor by presenting new explanations, legal theories, or proof. *Id.* Neither can Rule 60(b) motions be used to re-litigate the merits of the forfeiture case or to raise challenges that can be raised on appeal. *See United States v. One Rural Lot No. 10,356*, 238 F.3d 76, 78 (1st Cir. 2001).

Claimant's motion primarily espouses the same legal theory that he did in his summary judgment filings, which the Court presumes that he will also present on appeal. Ultimately, he disagrees with the tracing analysis in the Court's Memorandum Opinion and Order of April 3, 2013 [DE 43]. Again, he cites to lengthy portions of Craig Butler's affidavit and reiterates many of the arguments already made. This Court had the benefit of Mr. Butler's affidavit and the evidence available from other witnesses, as well as the bank records associated with each cashier's check, when it reached its conclusion on the motions before it that resulted in the judgment which is the subject of this motion.[2] Clearly, Claimant disagrees with the Court's

---

[2] Claimant also argues that there was a procedural error in the decision making process because he was never able to "cross-examine" government witness Dale Cannon, upon whose testimony the United States relies in part to support its position, because he was not a party at the trial in Frankfort Criminal Action No. 3:08-cr-31. Claimant does not explain, however, why he did not seek to depose Dale Cannon during the period of discovery available in this

analysis of that evidence. This does not mean that the Court has experienced "confusion," as he suggests, regarding transactions at bar, nor does it necessarily lead to the conclusion that the Court made a legal error. Those issues may be taken up on appeal in due course but will not be addressed further by this Court at this time.

He has, however, presented the Court with a compelling argument which merits further consideration on one issue. Specifically, Claimant argues that the Court's decision is founded, in part, on a legal error because it determined that the commingling of tainted funds (the proceeds of Target's fraud) with legitimately obtained funds (Vernon Smith's own funds received from black lung and social security benefit payments deposited directly and regularly into his account) in order to purchase the certificates of deposit rendered the entire value of the certificates of deposit purchased with those funds forfeitable, relying on *United States v. Huber*, 404 F.3d 1047, 1057–58 (8th Cir. 2005). He reasons that, in fact, *Huber* has to do less with forfeitability of funds because they were briefly combined with tainted funds in a bank account than their

---

matter or seek to postpone a decision on the merits of the motion for summary judgment so that he might do just that. In other words, the Court sees no error which would merit relief on these grounds.

forfeitability because of the way that those funds were involved in facilitating a money laundering scheme *by* the party claiming an interest in those funds and objecting to the forfeiture. *See also United States v. Funds on Deposit at Bank One Indiana Account 1563632726*, No. 2:02-cv-480, 2010 WL 909091, at *9 (N.D. Ind. Mar. 9, 2010); *United States v. Warshak*, 562 F. Supp. 2d 986, 1005 (S.D. Ohio 2008). The Court understands that Claimant wishes for the Court to conclude that the value of the cashier's checks which is attributable to funds drawn from his own "legitimate" funds (i.e., black lung and social security benefits and other deposits not traced by the United States to Target investor funds) in his bank account should not be subject to forfeiture and that his claim to that amount is valid because he did not have the requisite knowledge of the fraudulent provenance of the funds with which his own untainted funds were co-mingled.

Upon reconsideration and in the absence of evidence to establish that he knowingly participated in either the Target fraud itself or a money laundering scheme with respect to the proceeds of that fraud (i.e., that he knew or should have known that the money his son deposited in his account was the proceeds of fraud), the Court agrees. No one suggests that the funds in Claimant's bank account –

other than those traceable to Target — were associated with Target's fraud except, as the government has argued, through commingling. The government's own tracing evidence reveals that some portion of the funds used to acquire the cashier's checks came from direct deposits of black lung or social security benefits which belonged to Claimant and were received over time by Claimant. Nor is there evidence which, in the Court's mind, establishes by a preponderance that Claimant knew or should have known of his son's fraudulent activities.

Certainly, no one disputes that Claimant lived near his son on the same or a contiguous tract of land, that his son had an office on that property, or that Target's mail was received at Claimant's address for a period of time. That said, without more, this is not evidence that Claimant was aware or necessarily should have been aware of the misrepresentations visited on investors and potential investors in the Target oil and gas scheme or the losses suffered as a result of the fraud adjudicated in *United States v. Smith*, Frankfort Criminal Action No. 08-31-JMH. The only direct evidence of Claimant's knowledge is his sworn testimony that he did not "know one thing about [Target] in no way." [DE 28-3 at pp. 17-18.] The circumstantial evidence presented by the government simply

is not enough to persuade a trier of fact by a preponderance of the evidence that Claimant had knowledge or should have had knowledge sufficient to participate in a money laundering offense such that his own funds would be forfeitable.

Under the forfeiture statute, where legitimate and illegitimate funds are comingled, the funds are forfeitable only to the extent that the funds can be traced to an illegal transaction. *United States v. Conner*, No. 90-3470, 1991 WL 213756, at *4 (6th Cir. 1991) (citing *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1159 (2nd Cir 1986)); *see United States v. Coffman*, 859 F.Supp.2d 871, 875 (E.D. Ky. 2012) (Caldwell, D.J.) (addressing the forfeitability of a criminal defendant's interest in funds involved in money laundering and stating that "[m]oney laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture under § 981(a)(1)(C) because it applies to more than just the laundered property or proceeds from the laundered property. Money laundering forfeiture is required for all property "involved in" the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources."); *see also United States v. Premises Known as 7725 Unity Ave. North, Brooklyn Park,*

*Minn.*, 294 F.3d 954, 958-59 (8th Cir. 2002) (citing *United States v. 92 Buena Vista Avenue*, 507 U.S. 111, 123 (1993); *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 90 (5th Cir. 1990); *United States v. 1980 Lear Jet, Model 35A*, 38 F.3d 398, 401 (9th Cir. 1994) ("This notion of an 'innocent lienholder' constitutes an exception to the rule that property used to facilitate a felony drug transaction will be forfeited *in toto* to the federal government."); *United States v. 15603 85th Avenue North*, 933 F.2d 976, 982 (11th Cir. 1991)) (construing 21 U.S.C. §881(a)(6) and concluding that loan proceeds commingled with illegal drug proceeds and claimed by lender were not traceable to illegal drug money and were not forfeitable where there was no evidence that lender had knowledge of borrower's drug activities).

Here, the difference between the identity of the claimant in the present case and that in *Huber* or, for that matter, the situation addressed by Judge Caldwell in *Coffman* is of real import. The present case involves a claim to "innocent" funds commingled with "tainted" funds by someone who was without knowledge of the fraud or the fact that proceeds of fraud were being laundered using his account and his money so as to permit the lawful forfeiture of otherwise legitimate but commingled funds. Certainly, he has no claim to the "tainted" funds for the reasons

described in this Court's earlier Memorandum Opinion and Order [DE 43] of April 3, 2013, but the Court concludes that he has adequately argued that the value of the cashier's checks traceable to his own "innocent funds" is not subject to forfeiture.

In other words, the Court reiterates its earlier conclusion that the United States has demonstrated by a preponderance of the evidence that a portion of the value of the cashier's checks — $47,000 of the $60,649.64 value of cashier's check #062629 and $75,000 of the $100,000 value of cashier's check #022175 — are proceeds traceable to a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343 for the reasons stated in its opinion of April 3, 2013 [DE 43]. However, since the evidence does not demonstrate by a preponderance of the evidence that the remainder of the value—$13,649.64 of check #062629 and $25,000 of check #022175 for a total of $38,649.64—represents proceeds traceable to fraud, those funds are not subject to forfeiture simply by virtue of the commingling of funds in those amounts with funds "tainted" by fraud.

Further, the Court concludes that those funds— $38,649.64—belong to Vernon Smith. Thus, those funds

should be returned to him in keeping with 28 U.S.C. § 2465. *See* Fed. R. Civ. P. 56(a).

Accordingly, **IT IS ORDERED:**

(1) that Claimant Vernon Smith's Motion to Correct Mistake Pursuant to Fed. R. Civ. P. 60(b)(1) [DE 46] is **GRANTED IN PART** and **DENIED IN PART;**

(2) that the Claimant's Motion for an evidentiary hearing [DE 50] is **DENIED**.

This the 8th day of August, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge